**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 25-454-1** |
| | : | |
| **ARTHUR CORBETT-BURNS** | : | |

**Diamond, J.** **August 5, 2026**

## MEMORANDUM OPINION

Charged with one count of possessing a firearm as a felon, Defendant Arthur Corbett-Burns moves to suppress the handgun police recovered when they arrested him. (Doc. No. 16); 18 U.S.C. § 922(g)(1). I conducted an evidentiary hearing on May 20, 2026. (Doc. No. 28.) Although Defendant also moves to suppress a "small amount of controlled substances" police recovered from him, neither Party has proposed any factual findings regarding that seizure. (Doc. Nos. 16 ¶ 5, 34, 35.) Because police testimony corroborated by body-worn camera footage confirms that Defendant was lawfully detained and searched, I will deny the Motion. In the alternative, because Defendant made it impossible for police to conduct a traffic stop and pat down (and thus recover the gun he was carrying), I will deny the Motion under the Inevitable Discovery Rule.

Pursuant to Fed. R. Crim. P. 12(d), I make the following findings and conclusions.

## FINDINGS OF FACT

The Government called Gregory Coppola, who has served as a Philadelphia Police Officer for nine years. (Tr. at 6:2–21.) The Government also introduced footage from the body cameras worn by Officer Coppola and his partner, Officer Jordan Gillies. (Id. at 17; Gov't Exs. 3, 4.) I credit the Government's evidence and Officer Coppola's testimony. I find that the Government has proven the following facts by an evidentiary preponderance.

On July 20, 2025, fully uniformed Officers Coppola and Gillies were driving in a marked

police car in the 12th Police District in southwest Philadelphia—a high crime area. (Id. at 8:8–9:14.) Coppola was driving. (Gov't Ex. 3.) Both Officers wore body cameras. (Gov't Exs. 3, 4.)

At 5:20 p.m., the Officers were in the parking lot of Happy Day Food Market at the corner of South 58th Street and Whitby Avenue. (Tr. at 8:20–23, 10:11–14.) They saw Defendant riding a motorized scooter northbound on the 1300 block of South 58th Street. (Id. at 10:7–11.) Defendant crossed in front of the parked police car, looked back at the Officers, and then turned eastbound onto Broomall Street, which is a westbound thoroughfare. (Id. at 13:9–15 (Coppola: "[A]ll cars [parked on the roadside were] facing" west).) Seeking to get away from the Officers, Defendant rode the wrong way on Broomall Street, while he "continuously look[ed] back" at them. (Id. at 13:24–25.) They continued to follow Defendant south on 57th Street and after he made a U-turn north on 57th Street. (Id. at 14:1–4.) The Officers followed him west on Broomhall and around the square block bordered by 58th Street, Thomas Avenue, and 57th Street. (Id. at 14:4–10.) The Officers then activated their car's lights and siren so that Defendant would stop. (Id. at 14:11–13.) When he did not stop, the Officers pulled up alongside him, honked the car's horn, and told him through the passenger-side window to stop. (Id. at 14:12–16.)

Defendant slowed momentarily, asked "why are you stopping me?" and continued to ride away south on 57th Street. (Gov't Ex. 4 at 17:19:11; Tr. at 14:15–16, 78:8 (Coppola: "I don't even know that he stopped").) He then rode up onto the sidewalk, fell off his scooter, ran up the steps of a nearby house and through the front yard, then hopped over a fence. (Tr. at 14:17–24.) When Officer Coppola (who repeatedly ordered Defendant to stop) caught up with Defendant, they "both fell to the ground." (Id. at 15:4–6, 41:13–14.) Coppola put his hand on the black crossbody bag Defendant wore across his chest. (Gov't Ex. 4 at 17:19:44.) Coppola felt what he "immediately recognized to be a firearm." (Tr. at 15:5–8.) He tapped the button on his body-worn camera,

activating the sound recording (the video recording having begun a minute earlier). (Gov't Ex. 3 at 17:20:07; Tr. at 82:20–84:9; 94:22–95:2.) After Defendant was handcuffed, Coppola recovered a Stoeger, Model STR-9SC, 9mm semiautomatic pistol from the bag. (Tr. at 15:10–15; Gov't Ex. 2.)

Although the Parties apparently agree that the Officers also then recovered from Defendant thirteen small pink plastic jars containing a substance later determined to be crack cocaine, that evidence was not introduced or otherwise addressed at the hearing. (Doc. No. 34 at 1 n.1.)

## CONCLUSIONS OF LAW

Arguing primarily that Officer Coppola was not credible, Defendant urges that I should suppress the gun and the drugs because the police lacked probable cause to stop or arrest him. (Doc. No. 35 at 6.) I have credited Officer Coppola's testimony, however, as well as the Government's other evidence. Accordingly, I conclude that police had probable cause to stop Defendant after seeing him violate the Traffic Code. 75 Pa. Cons. Stat. § 3308(b). The Officers' subsequent search of Defendant was permissible because he fled and resisted their attempts to conduct a permissible traffic stop. 75 Pa. Cons. Stat. § 3733(a). Alternatively, I conclude that under the Inevitable Discovery Rule, the police lawfully recovered the gun and drugs.

### A. Lawful Stop

Defendant first argues that the Officers lacked reasonable suspicion or probable cause to stop him. (Doc. No. 16 ¶ 5.) I disagree.

Police may conduct a brief, investigatory stop and protective search when they have a reasonable, articulable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 21 (1968). An officer's "good faith decision to stop a car is 'reasonable where the police have probable cause to believe that a traffic violation has occurred.'" United States v. Leal, 235 F.

App'x 937, 939–41 (3d Cir. 2007) (quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

As I have found, the Officers saw Defendant drive his scooter the wrong way on a one-way street. They thus had probable cause to believe that he was violating the state Traffic Code, and so were authorized to stop him. 75 Pa. Cons. Stat. § 3308(b) (driving the wrong way on a one-way street is a summary violation); Leal, 235 Fed. App'x at 939; United States v. Smith, No. 18-93, 2018 WL 4207152 at *2 (E.D. Pa. Sep. 4, 2018) (officer had probable cause to believe defendant was riding his bike the wrong direction down a one-way street); Commonwealth v. Ibrahim, 127 A.3d 819, 824 (Pa. Super. Ct. 2015) (same); United States v. Lewis, 711 F.Supp.3d 444, 458 (E.D. Pa. 2024) (officer had probable cause to arrest a fleeing driver who committed "multiple dangerous traffic violations" including "driving the wrong way down a residential one-way street"). Only after the Officers followed Defendant's tortuous route (as he tried to elude them), did they activate their lights and siren and tell him to pull him over. Defendant refused to stop, however.

Defendant was thus not seized for Fourth Amendment purposes until Officer Coppola tackled and handcuffed him. See United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2015) (seizure occurs when there is submission to "a show of authority" (quoting California v. Hodari D., 499 U.S. 621, 626 (1991))). Even if Defendant briefly slowed when the Officers ordered him to stop, this "momentary compliance" was not submission. See United States v. Richardson, 504 F. App'x 176, 182 (3d Cir. 2012) ("[M]omentary compliance does not amount to submission to a seizure.").

**B. Lawful Search**

During a lawful traffic stop, "the officer may pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants

might be armed and dangerous." United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004). Although an investigatory traffic stop can be based on reasonable suspicion, a warrantless arrest must be based on probable cause. Leal, 235 F. App'x at 941. Officers may "search the person arrested in order to remove any weapons" incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 762–63 (1969).

As I have explained, the Officers were legally permitted to stop Defendant for the traffic violation. Leal, 235 Fed. App'x at 939. Although the uniformed Officers activated their lights and siren, honked the car's horn, and ordered him to stop, Defendant fled. Even after he fell off his scooter, he ran "despite repeated orders to stop, and he did not stop running until he was tackled" by Officer Coppola. Bonner, 363 F.3d at 218. Defendant's "flight from a non-consensual, legitimate traffic stop" in a high crime area "gives rise to reasonable suspicion" that he was armed and dangerous. Id. The Officers were thus authorized to pat him down for their protection.

Moreover, even if Coppola's tackling and handcuffing Defendant amounted to a de facto arrest, that arrest was permissible. As I have discussed, Defendant continued to ride away after the Officers turned on their lights and siren, honked the horn, and told him to stop. The Officers thus had probable cause to arrest Defendant for fleeing from a police officer. 75 Pa. Cons. Stat. § 3733(a) ("Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits" a misdemeanor offense); United States v. Morrison, Nos. 23-3067, 23-3068, 2024 WL 4986939 at *3 n.2 (3d Cir. Dec. 5, 2024) ("[E]ven assuming" an Officer drawing his weapon and ordering a defendant out of a vehicle "was a de facto arrest, [the Officer] had probable cause to arrest [Defendant] for attempting to elude a police officer" after he fled (citing 75 Pa. Cons. Stat. § 3733(a)).). Accordingly, Coppola could lawfully

search the crossbody bag Defendant was wearing and recover the gun in the bag incident to arrest. See United States v. Shakir, 616 F.3d 315, 321 (3d Cir. 2010) ("[A] search is permissible incident to a suspect's arrest when, under all the circumstances, there remains a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container" being searched, even if the suspect is already handcuffed.).

In sum, the search—whether pursuant to a traffic stop or incident to a de facto arrest—was reasonable under the Fourth Amendment.

**C. Inevitable Discovery**

Suppression is not warranted "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means" by the police "following routine procedures." United States v. Vasquez De Reyes, 149 F.3d 192, 194–95 (3d Cir. 1998). As I have discussed, the Officers permissibly stopped Defendant for a traffic violation. Leal, 235 Fed. App'x at 939. During that stop, the Officers could conduct a "limited weapon pat-down[]," given Defendant's "suspicious behavior": as soon as Defendant spotted the police, he tried to get away, speeding around the block (making a U-turn after traveling less than a block south on 57th Street), while repeatedly looking back at the police. United States v. Moorefield, 111 F.3d 10, 13 (3d Cir. 1997) (passenger's "furtive hand movements and refusal to obey the officers' orders" after he was pulled over justified pat-down); United States v. Jackson, 120 F.4th 1210, 1221 (3d Cir. 2024) (frisk of driver was permissible "not only because the car had an expired registration and mismatched tag but also because of the evasive maneuvers that the driver took when [the officer] pulled behind him in a fully marked police car" before pulling him over). As this Court has found, "PPD officers are trained to pat down a suspect who they believe may have a weapon." Hicks v. City of Philadelphia, 783 F.Supp.3d 834, 842 (E.D. Pa. 2025); (see

Tr. 21:16–17 ("There are certain protocols that [police] follow when . . . conducting a stop."), 82:11–16 ("Q: You are also supposed to be utilizing your different policies . . . whenever you are trying to make a stop of a motor vehicle. Is that fair? A [Coppola]: That's fair.").) Had Defendant followed the lawful police commands to stop, the Officers would have immediately patted him down and so necessarily would have discovered the gun he was carrying. See United States v. Fields, 449 Fed. App'x 146, 149 (3d Cir. 2011) (officers who had reasonable suspicion to conduct a Terry stop and frisk would have inevitably discovered a gun had the defendant complied with their orders). Because the evidence police seized is admissible on this alternative basis, I will deny the Motion on this ground as well.

## CONCLUSION

Police had probable cause to detain and arrest Defendant after he defied their lawful efforts to stop him for violating the Traffic Code. The evidence police recovered is thus admissible. Moreover, the gun (which is the only evidence Defendant addresses in his proposed factual findings) would have been discovered in the pat-down search Officer Coppola inevitably would have conducted had Defendant complied with the lawful police order to stop. Accordingly, I will deny Defendant's Motion on this alternative ground.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

Paul S. Diamond, J.